**McVEY et al., Appellants,**

v.

**CITY OF CINCINNATI, Appellee.**

[Cite as *McVey v. Cincinnati* (1995), 109 Ohio App.3d 159.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950189.

Decided Dec. 20, 1995.

*Mark W. Wegford* and *Jeffrey A. Dehner,* for appellants.

*Fay D. Dupuis,* City Solicitor, and *Hugh O. Frost II,* for appellee.

PAINTER, Judge.

Plaintiffs-appellants Kathryn and Larry McVey appeal from the trial court's order granting summary judgment in favor of defendant-appellee city of Cincinnati. In their single assignment of error, they allege that the city was not immune from liability under R.C. Chapter 2744 for injuries suffered by Kathryn McVey as a result of the city's negligent operation of an escalator in the parking garage of a public stadium.[1] We agree and reverse the trial court's granting of summary judgment.

## FACTS

On August 31, 1991, the McVeys and their son attended a Cincinnati Reds baseball game at Riverfront Stadium in Cincinnati. After the game, the McVeys boarded a series of escalators that would take them down through various levels of the stadium parking garage to the street level. The escalators were very crowded, with two or three people standing on each step. The McVeys proceeded down the first escalator without incident, and then moved onto a second escalator. Within seconds, it was apparent that there was so much congestion at the bottom of the escalator that the people had no place to go once they reached the bottom. Some people jumped over the sides of the escalator, and others were pushed backwards by the persons in front of them, causing what was described by several witnesses as a "domino effect." Kathryn McVey stated in her

---

1. We have *sua sponte* removed this case from the accelerated calendar.

deposition that as a result of the congestion and the related effect of being knocked backwards by the individual in front of her, she struck her head on the floor of the escalator, causing her serious injury.

The McVeys initiated the instant negligence action against several defendants,[2] including the city of Cincinnati, in which they alleged, *inter alia,* that the city had failed in its duty to regulate, supervise, and/or control the crowd entering and exiting from the escalator, and that the resultant overcrowding on the escalator had created a hazardous condition which impeded the safe egress of the passengers. The McVeys also alleged that the city had a duty to provide working and accessible safety devices and/or attendants to stop the escalator during an emergency situation. After a period of discovery, the city moved for summary judgment, arguing that it was immune from liability under R.C. Chapter 2744, and also that the McVeys had failed to offer any evidence demonstrating negligence by the city. Though the trial court granted the motion, we do not have the benefit of the judge's analysis.

## DISCUSSION

R.C. Chapter 2744, the Political Subdivision Tort Liability Act, was enacted in response to the abolition of the doctrine of common-law sovereign immunity by the Ohio Supreme Court in *Haverlack v. Portage Homes,.Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. R.C. 2744.02(A)(1) provides that a political subdivision is not liable for damages for "injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." This broad grant of immunity is subject to several exceptions, including R.C. 2744.02(B)(2), which provides that political subdivisions are liable for injuries "caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.01(G)(2)(e) specifically includes "[t]he operation and control of a public stadium * * * or off-street parking facility" as proprietary functions.

■ In its appellate brief, the city does not dispute the applicability of this provision but instead argues that the city's immunity is rooted in R.C. 2744.03(A)(3) and (5), which, if apposite, provide a political subdivision with a second opportunity to escape liability. They provide:

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the

---

**2.** The McVeys voluntarily dismissed the Cincinnati Reds and General Elevator Company, Inc., from the action.

discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

" * * *

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

The city maintains that it is immune from liability because the decision to forgo placing employees near the escalators was within the discretion of Glenn Redmer, the stadium manager. In his affidavit, Redmer stated that "it ·was my opinion and decision that it was not necessary to post personnel at the escalators to manage, regulate, supervise or control the flow of persons entering, riding on or exiting from the escalators in the Riverfront Stadium Parking Garage before, during or after Cincinnati Reds games."

In oral argument before this court, the city asserted that discretion would be involved in almost *any* actions of city employees, including a situation where a city vehicle, engaged in a proprietary function, negligently turned left in front of oncoming traffic. In the city's view, such an act—turning left in the exercise of a "judgment call"—would be "discretionary." Thus R.C. 2744.03(A)(5) would afford the city a complete grant of immunity, unless the act was performed in a willful or wanton manner. Horsefeathers. Unfortunately, too many courts have fallen victim to this specious argument.

The correct analysis, in our opinion, was advanced by Judge McCormac in the recent case of *Bolding v. Dublin Local School Dist.* (June 15, 1995), Franklin App. No. 94APE09–1307, unreported, 1995 WL 360227. In *Bolding,* a student at Dublin Middle School fell and was injured while participating in a school field trip. The student claimed that the cause of the accident was the negligent planning or supervision of the outing. The court examined R.C. 2744.03(A)(5) and offered a cogent analysis of the circumstances under which that provision applies. If the particular conduct alleged against the board of education was one characterized by a high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, such as the design and type of school buses, the board of education was immune from liability. If, however, the accident was caused by the negligence of school teachers or employees carrying out the activity, *i.e.,* the operation of the school bus by an employee, the board of education remained liable for the conduct of its employees.

█ Immunity attaches only to the broad type of discretion involving public policy made with "the creative exercise of political judgment." *Bolding, supra.* Immunity does not apply to the negligence of employees in "the details of carrying out the activity even though there is discretion in making choices." *Id.* We cannot improve on Judge McCormac's analysis.

We are not persuaded that the "discretionary defenses" relied upon by the city are applicable under the unique facts of this case. Without question, the city made a decision, at some unspecified time, to install escalators in its stadium parking facility. That decision itself may have involved discretion. The operation of the escalators is a different issue, however, and the discretion involved in "making choices" hardly rises to the "creative exercise of political judgment." *Id.;* see, also, *Ward v. Oak Hills School Dist.* (Dec. 6, 1995), Hamilton App. No. C–950075, unreported, 1995 WL 714263. By installing escalators the city became a common carrier of persons and owed the highest degree of care to those individuals utilizing one of its escalators. *May Dept. Stores Co. v. McBride* (1931), 124 Ohio St. 264, 178 N.E. 12; *Welch v. Rollman & Sons Co.* (1942), 70 Ohio App. 515, 25 O.O. 310, 44 N.E.2d 726. Undoubtedly, the city was aware that large numbers of persons used the escalators at the conclusion of each baseball game. The safe passage of those persons, as business invitees, was not a matter of discretion or policy-making, but was a duty assumed by the city when it offered that mode of transportation to the public. Thus, the city, in deciding to provide for a series of escalators on its proprietary premises, subjected itself to liability for the negligence of its employees in the performance or nonperformance of the activities associated with that endeavor. See *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808; *Bolding v. Dublin Local School Dist., supra.* We hold, therefore, that under the facts of this case, the city is not entitled to the immunity afforded by R.C. Chapter 2744.

█ The city argues in the alternative that even if R.C. Chapter 2744 is not applicable in this case, summary judgment was still properly granted in its favor because the McVeys failed to present evidence demonstrating a question of fact as to whether the city had acted negligently. Considering that under Civ.R. 56 the evidence was to be construed most strongly in favor of the McVeys, we are not persuaded that the city was entitled to judgment as a matter of law.

The McVeys offered the affidavits of several persons who witnessed the events that occurred on the evening in question. The affiants indicated (1) the escalator was very crowded; (2) persons at the bottom of the escalator could not move forward due to large numbers of persons in front of them; (3) people riding on the escalator soon began falling backwards due to the congestion; (4) individuals on the escalator were pleading for others to move back and to stop the escalator; and (5) there were no employees or attendants present to regulate the flow of

persons using the escalator, or, in case of emergency, to deactivate the device. While the reason for the failure of the crowd to move away from the escalator's point of egress is not precisely explained by the witnesses, an inference certainly can be drawn that the large volume of people being carried into a limited space was a contributing factor. Based upon this evidence, coupled with the elevated (or perhaps escalated) standard of care owed by the city, we are convinced that a genuine issue of material fact exists with regard to whether the city failed in its duty to use the highest degree of care in the operation of its escalator.

## CONCLUSION

Therefore, the judgment of the trial court is reversed and the cause is remanded for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT, P.J., and M.B. BETTMAN, J., concur.