COPELAND et al., Appellants,

v.

CITY OF CINCINNATI et al., Appellees.

[Cite as *Copeland v. Cincinnati*, 159 Ohio App.3d 833, 2005-Ohio-1179.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040425.

Decided March 18, 2005.

834

Kelleye N. Moore, for appellants.

Julia L. McNeil, Cincinnati City Solicitor, and Geri Hernandez Geiler, Senior Assistant City Solicitor, for appellees.

SYLVIA SIEVE HENDON, Judge.

{¶ 1} Plaintiff-appellant Travohn Copeland was a child enrolled in a day camp operated by the city of Cincinnati in a city-operated community center when he was sexually assaulted in a bathroom by three other children who were enrolled in the camp. Copeland and his mother, plaintiff-appellant Bridget Johnson, filed a complaint in the Hamilton County Common Pleas Court against the city and its employees. Copeland and Johnson alleged that the city had negligently supervised its employees and had failed to provide adequate security for its premises. Copeland and Johnson also alleged that the city employees had acted wantonly and recklessly in the performance of their job duties and in their supervision of Copeland.

{¶ 2} The trial court granted the city's motion to dismiss the complaint, pursuant to Civ.R. 12(B)(6). Copeland and Johnson now appeal. In a single assignment of error, they argue that the trial court erred by granting the motion to dismiss. Because we conclude that the city was not entitled to immunity for its operation of a day camp, and because the complaint alleged facts sufficient to withstand the motion to dismiss the claims against the city and its employees, we reverse the judgment of the trial court.

### Civ.R. 12(B)(6) Standard of Review

{¶ 3} In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim, it must appear beyond doubt from the complaint that the

plaintiff can prove no set of facts entitling him to recovery.[1] Furthermore, "[i]n construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party."[2] "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss."[3]

### R.C. Chapter 2744 Is Constitutional

{¶ 4} First, Copeland and Johnson argue that the doctrine of sovereign immunity as recognized in R.C. Chapter 2744 is unconstitutional in that it deprives them of any recourse that they might have as a result of Copeland's injuries, in violation of Section 16, Article I of the Ohio Constitution. Courts in Ohio, including the Supreme Court and this court, have rejected this argument.[4]

### The City's Operation of a Day Camp Is a Proprietary Function

{¶ 5} Next, Copeland and Johnson argue that the city was not immune from liability under R.C. Chapter 2744 because the city's operation of the day camp was a proprietary function. To determine whether a political subdivision is immune from liability, we employ the three-tiered analysis provided by R.C. Chapter 2744.[5] In the first tier, R.C. 2744.02(A) sets forth the general rule that political subdivisions are not liable in damages for injury, death, or loss to persons or property. The second tier of the analysis requires a court to determine whether any of the exceptions to immunity listed in R.C. 2744.02(B) apply to strip the political subdivision of immunity. In the third tier of the analysis, "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies."[6]

---

1. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

2. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

3. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144–145, 573 N.E.2d 1063.

4. See, e.g., *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 653 N.E.2d 1186; *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 639 N.E.2d 31; *Thorp v. Strigari*, 155 Ohio App.3d 245, 2003-Ohio-5954, 800 N.E.2d 392; *Bundy v. Five Rivers Metroparks*, 152 Ohio App.3d 426, 2003-Ohio-1766, 787 N.E.2d 1279; *Spencer v. Lakeview Sch. Dist.*, 11th Dist. No. 2002–T–0175, 2004-Ohio-5303, 2004 WL 2803302.

5. See *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781.

6. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

{¶ 6} Copeland and Johnson argue that the general rule of immunity does not apply in this case. They contend that the city was stripped of its immunity under R.C. 2744.02(B)(2) because the city was engaged in a proprietary function. Under that section, political subdivisions are liable for injuries caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions. In its brief, the city argues that its operation of the camp within a community center was a governmental function and that the city was not stripped of its immunity pursuant to R.C. 2744.02(B)(2).

{¶ 7} R.C. 2744.01(G)(1) defines a "proprietary function" as a function of a political subdivision that satisfies both of the following:

{¶ 8} "(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

{¶ 9} "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons."

{¶ 10} In this case, the trial court held that the city's community center was an indoor recreational facility, so that its operation was a governmental function as specified in R.C. 2744.01(C)(2)(u).[7] Therefore, the court reasoned, the operation of the day camp within the community center was a governmental function. Accordingly, the court rejected the argument by Copeland and Johnson that the operation of the day camp was a proprietary function that stripped the city of immunity under R.C. 2744.02(B)(2).

{¶ 11} The Second Appellate District addressed a similar issue in *Amerson v. Dayton*.[8] In that case, a participant in a city-operated day camp suffered injuries during an outing at a city-operated park. The court acknowledged that the city's operation of a park was a governmental function, as specified in R.C. 2744.01(C)(2). But the court rejected the city's argument that its operation of the park encompassed all programs and activities conducted within the park, including the operation of the day camp. The court held that the city's operation of the day camp was a proprietary function because it was not described or specified in R.C. 2744.01(C) as a governmental function, and because it promoted public health, safety, or welfare and involved activities that were customarily offered by private organizations.

---

7. The current version of R.C. 2744.01, 2002 Am.Sub.S.B. No. 106, became effective April 9, 2003. The version in effect at the time of the assault in this case was 2001 Am.Sub.H.B. No. 215. Both versions include the operation of an indoor recreational facility as a governmental function.

8. *Amerson v. Dayton* (Sept. 19, 1989), 2nd Dist. No. 11460, 1989 WL 109291.

{¶ 12} We agree with the reasoning of the Second Appellate District. The operation of a day camp by a city is distinct from its operation of an indoor recreational facility. Because the operation of a day camp is not specifically listed as a governmental function in R.C. 2744.01(C), is one that promotes public health, safety, or welfare, but is typically engaged in by nongovernmental persons, we hold that it is a proprietary function as defined by R.C. 2744.01(G)(1). So the city was stripped of its immunity under R.C. 2744.02(B)(2). Accordingly, we hold that the trial court erred by holding that the city was immune from liability under R.C. 2744.02(A)(1).

### *The Complaint's Allegations Were Sufficient to Withstand Dismissal*

{¶ 13} Next, we turn to the claims by Copeland and Johnson that the city's employees were not immune from liability under R.C. 2744.03(A)(6) and that the city was responsible for the foreseeable criminal conduct by Copeland's assailants. In the complaint, Copeland and Johnson alleged the following facts in support of their claims. Copeland's guardians had paid a fee to enroll him in the day camp. Copeland was a mentally and emotionally challenged minor, and his guardians had been assured by the city's employees that Copeland would receive adequate supervision. At the time of the assault, the city and its employees were on notice of Copeland's special needs and on notice that other children in the day camp had been picking on and stealing from him. Furthermore, the three camp attendees who sexually assaulted Copeland had been under the supervision of the city and its employees at the time.

{¶ 14} Presuming that "all factual allegations of the complaint are true and mak[ing] all reasonable inferences in favor of the non-moving party," [9] we must now determine whether the allegations by Copeland and Johnson were merely conclusory or whether they were sufficient to withstand a Civ.R. 12(B)(6) motion to dismiss.

{¶ 15} First, we consider the claim that the city's employees were not immune from liability pursuant to R.C. 2744.03. While we have held that the exception in R.C. 2744.02(B)(2) essentially stripped the city of immunity with respect to its proprietary function in this case, the exception does not have the same effect for the city's employees. "Exceptions to immunity for employees who are being sued in their individual capacity * * * are set forth in R.C. 2744.03(A)(6)." [10] Pursuant to R.C. 2744.03(A)(6), an employee is immune from liability unless (a) the employee's acts or omissions were manifestly outside the

9. *Mitchell,* supra note 2, 40 Ohio St.3d at 192, 532 N.E.2d 753.

10. *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities,* 150 Ohio App.3d 383, 2002-Ohio-6344, 781 N.E.2d 1034.

scope of the employee's employment or official responsibilities, (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner, or (c) liability is expressly imposed upon the employee by another section of the Revised Code.

{¶ 16} In their complaint, Copeland and Johnson alleged that the city's employees were wanton and reckless in the performance of their jobs and in their supervision of Copeland. The Ohio Supreme Court has defined the term "reckless" to mean acting despite " ' "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." ' " [11]

{¶ 17} The Supreme Court has held that "wanton misconduct [is] the failure to exercise any care whatsoever." [12] The court has explained, " '[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." [13]

{¶ 18} The facts alleged in the complaint, if proved true, would tend to indicate reckless and wanton behavior on the part of the city's employees. For example, the employees knew of Copeland's special needs and of the prior abuse, yet while attending the day camp, Copeland was sexually assaulted by three other children in a bathroom. Because there was a sufficient basis to conclude that the allegations fell within the exception to immunity for the city's employees, we hold that the claims against the employees were sufficient to withstand a motion to dismiss.

{¶ 19} Next, we turn to the allegations by Copeland and Johnson that the city was responsible for the foreseeable sexual assaults because a special duty existed between the city and Copeland, as well as between the city and Copeland's assailants. "Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which

---

11. *Cater*, supra note 6, 83 Ohio St.3d at 33, 697 N.E.2d 610, quoting 2 Restatement of the Law 2d, Torts (1965) 587, 500.

12. *Fabrey*, supra note 4, 70 Ohio St.3d at 356, 639 N.E.2d 31, quoting *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367.

13. Id., quoting *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 269 N.E.2d 420.

gives the other the right to protection. * * * The special relationships which may give rise to a duty to control the conduct of another person may be between the defendant and either the person whose conduct needs to be controlled or the injured plaintiff, the foreseeable victim." [14]

{¶ 20} In this case, the employees were charged with supervising Copeland and the other children, so that a special duty arguably arose from an in loco parentis relationship. At this point, where we must accept the facts of the complaint as true and make all reasonable inferences in favor of the nonmoving party, we hold that the trial court erred by dismissing the negligence claims against the city and its employees.[15]

{¶ 21} Accordingly, we sustain the assignment of error, reverse the judgment of the trial court, and remand this cause for further proceedings consistent with law and this decision.

Judgment reversed
and cause remanded.

HILDEBRANDT, P.J., and PAINTER, J., concur.

---

14. *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173–174, 543 N.E.2d 769.

15. See *Mitchell*, supra note 2.