AVILA et al., Appellees,

v.

CITY OF CINCINNATI, Appellant; et al., Appellees.

[Cite as *Avila v. Cincinnati,* 182 Ohio App.3d 642, 2009-Ohio-2734.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080837.

Decided June 12, 2009.

The Law Offices of Blake R. Maislin, L.L.C., and Blake R. Maislin, for appellees Miguel Avila and Donald Davis.

John P. Curp, Cincinnati Solicitor, and William C. Hicks, Senior Assistant City Solicitor, for appellant.

Benjamin Yocum & Heather and Timothy P. Heather, for appellee Karim Khrissi.

---

J. Howard Sundermann, Judge.

{¶ 1} Defendant-appellant, the city of Cincinnati, appeals from the trial court's entry denying its motion for summary judgment and granting the cross-motions for summary judgment of plaintiffs-appellees, Miguel Avila and Donald Davis, and defendant-appellee, Karim Khrissi, on the city's claim of sovereign immunity.

## I.   Two Motor–Vehicle Accidents

{¶ 2} The current litigation between the parties stems from two motor-vehicle accidents that occurred on the evening of March 3, 2007.  Peggy Jones, an employee in the city's public-services department, was driving west on Westwood Northern Boulevard near the intersection with McHenry Avenue when she came upon some running water coming from under the street.  The water had started to form an icy spot in the middle of the two westbound lanes of Westwood Northern Boulevard.  To the right of the roadway, Jones saw two orange cones with the initials for the Greater Cincinnati Water Works painted on them.  As Jones drove over the patch of ice and water on the road, she noticed that her car swerved slightly.  She immediately pulled over, reported the problem to the city, and requested a salt truck.

{¶ 3} As Jones was stopped, she saw a white Nissan Xterra lose control on the same icy spot.  The vehicle struck the concrete median in the center of the road, flipped over, and ended upright in some bushes on the other side of the road. Jones called for help and drove over to assist the driver, Avila, and his passenger, Davis, who had exited from the vehicle and were standing nearby.  While Jones was speaking with Avila and Davis, Khrissi, a taxi driver, drove his vehicle through the same patch of ice and water.  Khrissi lost control of his vehicle and collided with Avila, the Nissan Xterra, and Jones's vehicle.

{¶ 4} Approximately 35 days before the accident, the city had been notified of a leak in the water-distribution system at 2308 Westwood Northern Boulevard.  A city employee was immediately dispatched to the scene.  He took measurements, but was unable to locate the curb box that controlled the flow of water from the water main to the branch line.  Because the leak did not involve citizens or businesses out of water, it was put on the list of issues to be investigated and addressed.  It was to be salted as needed while awaiting repair.  Thereafter, city crews visited the leak several times in an effort to diagnose and repair the problem.

## II. The Lawsuit

{¶ 5} Avila and Davis subsequently filed suit against Khrissi, his employer, defendant-appellee Ohio Taxi, and the city of Cincinnati. They asserted that Khrissi, Ohio Taxi, and the city had negligently caused injuries to them arising out of the March 3, 2007 motor-vehicle accident. At the time of the accident, Avila and Davis were insured under policies issued by Met Life Home & Auto ("Met Life"), General Casualty Insurance Company ("General Casualty"), and United Healthcare of Ohio ("United Healthcare"). As a result, Avila and Davis brought claims for uninsured/underinsured-motorist coverage against Met Life and General Casualty. They also joined Met Life and General Casualty in the action, along with United Healthcare, so that they could assert any existing subrogation interests in the litigation.[1]

{¶ 6} The only issue pertinent to this appeal is whether the plaintiffs' negligence claims against the city and Khrissi's cross-claim against the city are barred by the doctrine of sovereign immunity. In count seven of their amended complaint, Avila and Davis alleged that the city had "had a duty to maintain the water [main] break located at or near 2308 Westwood Northern Boulevard in a safe condition, [that] the city [had] created [an] unsafe condition by * * * not attending to the water main break," and that the city had "breached the duties owed to [Avila and Davis] by causing vehicles to slide uncontrollably on the ice formed by the water [main] break." Khrissi's cross-claim against the city alleged that any injuries or damages Avila and Davis had sustained in the accident had been a direct and proximate result only of the city's negligence. The city raised the affirmative defense of sovereign immunity in its answer to both the plaintiffs' amended complaint and Khrissi's cross-claim.

{¶ 7} Khrissi, Avila, and Davis subsequently moved for summary judgment on the city's affirmative defense of sovereign immunity. They argued that because the motor-vehicle accident had resulted from the city's negligent failure to maintain the water lines, which is defined as a proprietary function under R.C. 2744.01(G)(2)(c), the city was not entitled to immunity under R.C. 2744.02(B)(2). The city argued, however, in a cross-motion for summary judgment, that it was entitled to immunity because the accident had occurred from the formation of ice on the roadway and because the city's maintenance of the roadway was a governmental function under R.C. 2744.01(C)(2). The city alternatively argued that even if an exception to immunity applied, it was entitled to immunity under R.C. 2744.03(A)(3) and (A)(5) because the city had utilized its discretion to

---

1. Avila has since voluntarily dismissed his claims against General Casualty. Avila and Davis have also voluntarily dismissed their claims against Met Life. Our review of the record also reveals that there are a number of cross-claims pending between the defendants in the case. Those claims are not relevant to this appeal.

allocate its resources and personnel to treat the water leak with salt while it was being investigated and repaired. The trial court disagreed with the city, denied its motion for summary judgment, and entered summary judgment for Avila, Davis, and Khrissi. This appeal followed.

### III. Sovereign Immunity

{¶ 8} In its sole assignment of error, the city argues that the trial court erred by denying its motion for summary judgment and granting Avila, Davis, and Khrissi's motions for summary judgment.

{¶ 9} We review the trial court's decision on the summary judgment motion de novo. Summary judgment is appropriate when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party." [2]

{¶ 10} R.C. Chapter 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. First, R.C. 2744.02(A)(1) sets forth the general rule of immunity. It provides that political subdivisions are not liable in damages for injuries allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision. But the immunity afforded to a political subdivision in R.C. 2744.02(A)(1) is not absolute; it is subject to five exceptions listed in R.C. 2744.02(B). Thus, once immunity is established under R.C. 2744.02(A)(1), the second tier of the analysis is whether any of the five exceptions to immunity in section (B) applies. Finally, under the third tier of the analysis, immunity is reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies.[3]

### A. Maintenance of Water Lines Is a Proprietary Function

{¶ 11} The city first argues that because Avila's and Davis's injuries occurred on a roadway, their claims were not related to the water leak, but to the formation of ice on the roadway. Thus, the city contends that once water had leaked on the roadway, the situation no longer had to do with the city's maintenance of the water lines, a proprietary function not subject to immunity, but with its maintenance of the roadway, a governmental function for which it is entitled to immunity. The city's argument, however, ignores the core factual allegations in Avila and Davis's complaint.

---

2. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

3. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 697 N.E.2d 610.

{¶ 12} In count seven of their complaint, Avila and Davis alleged that the city had "had a duty to maintain the water [main] break located at or near 2308 Westwood Northern Boulevard in a safe condition, [that] the city [had] created [an] unsafe condition by * * * not attending to the water main break," and that the city had "breached the duties owed to [Avila and Davis] by causing vehicles to slide uncontrollably on the ice formed by the water break." Because these allegations did not concern the city's regulation, use, or repair of roadways, but instead implicated the city's maintenance of water lines, we find the city's first argument meritless.

{¶ 13} Citing *Copeland v. Cincinnati*[4] and *Burns v. Upper Arlington*,[5] the city next argues that maintaining roadways is a more specific function than maintaining water lines, and that because the former is a governmental function, while the latter is proprietary, immunity must apply. But *Copeland* is distinguishable because it compared the function of operating an indoor recreational facility with that of operating a day camp.[6] In that case, we held that operating a day camp was a more specific subcomponent of operating an indoor recreation facility.[7] In this case, however, the two functions of maintaining a roadway and maintaining water lines are entirely independent of one another. Separate departments within the city performed these two distinct, well-defined functions.

{¶ 14} *Burns* is also distinguishable. In that case, the court compared the function of maintaining a sidewalk with that of maintaining a sewer system.[8] The court concluded that because the actual conduct complained of involved the maintenance of a sidewalk, a governmental function, immunity applied.[9] In this case, however, Avila and Davis specifically alleged in their complaint that the city's negligent failure to maintain its water lines had caused the accident to occur.

{¶ 15} Maintaining water lines is a proprietary function under R.C. 2744.01(G)(2)(c).[10] Pursuant to R.C. 2744.02(B)(2), a city is liable for the negli-

---

4. *Copeland v. Cincinnati*, 159 Ohio App.3d 833, 2005-Ohio-1179, 825 N.E.2d 681.

5. *Burns v. Upper Arlington*, 10th Dist. No. 06AP–680, 2007-Ohio-797, 2007 WL 589111.

6. *Copeland*, supra, at ¶ 5–12.

7. Id.

8. *Burns*, supra, at ¶ 12–16.

9. Id.

10. *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109, paragraph two of the syllabus; see also *Marbro Builders, Inc. v. Cincinnati Water Works* (Nov. 16, 1983), 1st Dist. No. C–830047, 1983 WL 5316.

gent acts of its employees with respect to proprietary functions of the city. Because the maintenance and operation of a municipal corporation's water lines is defined as a proprietary function under R.C. 2744.01(G)(2)(c), and because Avila and Davis specifically alleged that the city's negligent failure to maintain its water lines had caused the accident at issue in this case, the trial court properly concluded that the city was not immune from liability. As a result, we find the city's second argument meritless.

### B. Routine Water–Line Maintenance Is Not a Discretionary Decision Under R.C. 2744.03(A)(3) and (A)(5)

{¶ 16} Finally, the city argues that even if we determine that Avila and Davis's claims involve a proprietary function, immunity was reinstated under R.C. 2744.03(A)(3) and (A)(5) because the city made a discretionary decision as to how to allocate resources and personnel to repair the water leak and to treat the leak with salt while it was being investigated and repaired.

{¶ 17} But Ohio courts have held that the discretion referred to in R.C. 2744.03(A)(3) and (A)(5) involves " 'policy-making and the exercise of independent judgment.' " [11] It does not involve routine maintenance decisions.[12] The city's prioritization of water-system repairs in this case did not involve a matter of discretion or policy-making as contemplated by the case law, but rather an issue of customer service. Under these circumstances, the city was not entitled to have immunity reinstated under R.C. 2744.03(A)(3) and (A)(5). We, therefore, overrule the city's sole assignment of error and affirm the judgment of the trial court denying the city's motion for summary judgment and granting the cross-motions for summary judgment of Avila, Davis, and Khrissi, on the city's claim of sovereign immunity.

Judgment affirmed.

PAINTER, P.J., and DINKELACKER, J., concur.

---

11. *Hacker v. Cincinnati* (1998), 130 Ohio App.3d 764, 770, 721 N.E.2d 416, quoting *McVey v. Cincinnati* (1995), 109 Ohio App.3d 159, 671 N.E.2d 1288.

12. *Perkins v. Norwood City Schools* (1999), 85 Ohio St.3d 191, 193, 707 N.E.2d 868; see also *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 285, 525 N.E.2d 808; *James v. Cincinnati*, 1st Dist. No. C–070367, 2008-Ohio-2708, 2008 WL 2312637, ¶ 38; *Hacker*, supra, at 770, 721 N.E.2d 416; *McVey*, supra, at 162–163, 671 N.E.2d 1288; *Neville v. Wyoming*, 1st Dist. No. C–020064, 2002-Ohio-4936, 2002 WL 31094766, ¶ 11.