[Cite as *Hope Academy Broadway Campus v. Integrated Consulting & Mgt.*, 2011-Ohio-6622.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96100 and 96101**

# HOPE ACADEMY BROADWAY CAMPUS, ET AL.

APPELLANTS

vs.

# INTEGRATED CONSULTING AND MANAGEMENT, ET AL.

APPELLEES

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-637589 and CV-637749

**BEFORE:** Cooney, J., Kilbane, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 22, 2011

**ATTORNEYS FOR APPELLANTS**

Michele L. Jakubs
Zashin & Rich Co., LPA
55 Public Square, 4th Floor
Cleveland, Ohio 44113

Joseph E. Rutigliano
260 Meadowhill Lane
Moreland Hills, Ohio 44022

April N. Hart, Esq.
April N. Hart Co., LPA
2529 Canterbury Road
Cleveland Heights, Ohio 44118

**ATTORNEYS FOR APPELLEES**

**For Community Educational Partnerships, LLC, and Beth Perry**

Sean P. Ruffin
401 Tuscarawas Street, W., Suite 200
Canton, Ohio 44702

**For Integrated Consulting and Management, LLC**

Joseph R. Klammer, Esq.
The Klammer Law Office, Ltd.
Lindsay II Professional Building
6990 Lindsay Drive, Suite 7
Mentor, Ohio 44060

COLLEEN CONWAY COONEY, J.:

{¶ 1} Appellants, 19 Hope Academy and Life Skills Boards (collectively referred to as the "the Boards"),[1] James E. Haynes, and James Stubbs, appeal the denial of their motion for partial summary judgment on tort claims brought against them by appellees, Integrated Consulting and Management, LLC ("ICM"), Community Educational Partnerships, LLC ("CEP"), and Beth Perry. We find some merit to the appeal and, therefore, affirm in part and reverse in part.

{¶ 2} The facts, as set forth in affidavits and deposition transcripts, are as follows:

{¶ 3} The 19 Hope Academy and Life Skills charter schools are publicly funded, privately managed alternatives to traditional public schools. They are nonprofit corporations with boards of directors, who are responsible for school operations, including compliance with Ohio law and Ohio Department of Education regulations. Appellant James E. Haynes ("Haynes") sat on the boards of all 19 charter schools at one time. Appellant James Stubbs ("Stubbs") sat on 15 of the 19 boards at one time.

{¶ 4} In the spring of 2006, the Boards were concerned that their management company, White Hat Management, was not providing adequate security services to the

---

[1] Appellants include: boards of the Hope Academy Broadway Campus, Hope Academy Brown Street Campus, Hope Academy Canton Campus, Hope Academy Cathedral Campus, Hope Academy Chapelside Campus, Hope Academy East Campus, Hope Academy High School, Hope Academy Lincoln Park Campus, Hope Academy Northcoast Campus, Hope Academy University Campus, Hope Academy West Campus, Life Skills Center of Canton, Life Skills Center of Cleveland, Life Skills Center of Lake Erie, Life Skills Center of Middletown, Life Skills Center of Northeast Ohio, Life Skills Center of Springleaf, and Life Skills Center of Summit County.

schools, and boards of 11 schools contracted with ICM for the provision of security services.[2] Joe Fouche ("Fouche") is the sole owner of ICM.

**{¶ 5}** In October 2006, all 19 Boards entered into a "Board Management Contract" with ICM for the provision of board management services. Pursuant to these agreements, the Boards agreed to pay ICM $1,500 per month, per school, for its services for a period of three years. Paragraph 17 of the parties' contracts, titled "Disclosure," prohibited ICM from contracting with any other companies providing services to the charter schools. Specifically, paragraph 17 provides:

> "ICM and its officers state that there is no financial interest with any Board member as it relates to this Agreement and that ICM does not contract with any other service provider or independent contractor hired by school."

**{¶ 6}** Shortly after contracting with ICM, the Boards executed consulting agreements with CEP for the provision of various educational services, including school assessments, programming for students, and human resources. Beth Perry and Angela Perry jointly own CEP. At the time the Boards contracted with ICM and CEP, Fouche and Angela Perry ("Perry") were romantically involved and had children together.

**{¶ 7}** In June 2007, the Boards had some financial and billing concerns and attempted to renegotiate the business management services agreement with ICM. Although Fouche expressed a willingness to renegotiate, the renegotiations were not

---

[2] The contracts between ICM and each of the boards were practically identical in content, with few insignificant differences.

successful. In September 2007, the Boards of all 19 charter schools terminated all ICM contracts and all CEP contracts. In a letter dated September 27, 2007, Haynes informed Fouche that ICM's contracts were terminated because board members had discovered that ICM had a business relationship with CEP, in breach of paragraph 17 of the contract. Haynes further stated that Fouche's concealment of the relationship "suggests the possibility of some fraudulent behavior on the part of the aforementioned businesses[.]"

{¶ 8} On October 2, 2007, the 19 Hope Academy and Life Skills Boards filed a complaint against ICM, Fouche, CEP, and Beth Perry, claiming fraud, conspiracy, and negligent misrepresentation and seeking equitable relief. On the same day, ICM filed a complaint against Haynes, Stubbs, April Hart-Todd ("Hart-Todd"), the Boards' in-house counsel, and the 19 Boards, claiming breach of contract and tortious interference with contracts. In November, CEP filed a counterclaim against the Boards also claiming breach of contract. The cases were consolidated.

{¶ 9} Following a series of amended pleadings and the resolution of claims between several of the parties, ICM maintains claims against the following: Hope Academy Broadway Campus, Hope Academy Cathedral Campus, Hope Academy Chapelside Campus, Hope Academy High School, Hope Academy Lincoln Park Campus, Hope Academy Northcoast Campus, Life Skills Center of Cleveland, Life Skills Center of Lake Erie, Life Skills Center of Northeast Ohio (collectively "Boards I"), Stubbs, Haynes, and Hart-Todd.

{¶ 10} In its amended complaint, ICM alleges that Boards I breached their contracts with ICM; that the Boards I, Stubbs, Haynes, and Hart-Todd tortiously interfered with ICM's contracts with peace officers; and that Stubbs, Haynes, and Hart-Todd tortiously interfered with ICM's contracts with the Boards and peace officers. Boards I maintains claims for fraud, conspiracy, negligent misrepresentation, breach of contract, and breach of fiduciary duties against ICM.

{¶ 11} CEP maintains claims against Hope Academy Broadway Campus, Hope Academy Cathedral Campus, Hope Academy Chapelside Campus, Hope Academy High School, Hope Academy Lincoln Park Campus, Hope Academy Northcoast Campus, Life Skills Center of Cleveland, Life Skills Center of Lake Erie, Life Skills Center of Middletown, Life Skills Center of Northeast Ohio, Life Skills Center of Springfield (collectively "Boards II"). In its amended complaint, CEP alleges that Boards II breached the contract between CEP and the Boards. Boards II maintains claims for fraud, conspiracy, negligent misrepresentation, breach of contract, and breach of fiduciary duties against CEP and Perry.

{¶ 12} In September 2009, Boards I, Stubbs, and Haynes filed a motion for partial summary judgment arguing, inter alia, that they are immune from liability under R.C. Chapter 2744 for the tortious interference claim. Boards II also filed a motion for partial summary judgment arguing they are entitled to statutory immunity from punitive damages pursuant to R.C. Chapter 2744. The trial court denied both motions in their entirety

without opinion. Boards I, Boards II, Stubbs, and Haynes now appeal, raising two assignments of error related to the claim of immunity.[3]

## Standard of Review

{¶ 13} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

## Tortious Interference With Contracts

{¶ 14} In their first assignment of error, Boards I, Stubbs, and Haynes (collectively referred to as "appellants") argue the trial court erred in finding they are not entitled to immunity for the claim of tortious interference with contracts. Appellants argue that, as charter schools, they are engaged in a governmental function and, therefore, are entitled to immunity under R.C. Chapter 2744.

---

[3]Hart-Todd is not a party in this appeal.

{¶ 15} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶14. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. *Cramer* at ¶14; *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶7. Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). *Cramer* at ¶15; *Ryll v. Columbus Fireworks Display Co.*, 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, ¶25. Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability. *Cramer* at ¶16; *Colbert* at ¶9. These defenses then reinstate immunity. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862.

{¶ 16} ICM contends the Boards are not immune from liability because the provision of security and board management services, or the decision to select the company to supply those services, are proprietary functions. In support of its argument, ICM relies on *Copeland v. Cincinnati*, 159 Ohio App.3d 833, 2005-Ohio-1179, 825 N.E.2d 681. In *Copeland*, the court held that a city's operation of a day camp was a proprietary function as opposed to a governmental function because "[t]he operation of a

day camp by a city is distinct from its operation of an indoor recreational facility." Id. at ¶12. The court further explained that "[b]ecause the operation of a day camp is not specifically listed as a governmental function in R.C. 2744.01(C), is one that promotes public health, safety, or welfare, but is typically engaged in by nongovernmental persons," it is a proprietary function not entitled to immunity.

{¶ 17} We find *Copeland* inapplicable to the facts of this case because R.C. 2744.01(C), which defines "governmental functions," expressly states that "governmental functions" include both, "[t]he provision of a system of public education," as well as "[a] function that the general assembly mandates a political subdivision to perform." R.C. 2744.01(C)(2)(c),(x). Although the Boards operate privately managed schools, community schools established under R.C. Chapter 3314 are political subdivisions with the benefit of governmental immunity. R.C. 2744.01(F) and 2744.02(A)(1). Haynes and Stubbs, as board members, are agents and employees of the political subdivision. Therefore, appellants are immune from liability under R.C. 2744.02(A), the first tier of the statutory immunity analysis.

{¶ 18} However, the immunity afforded in R.C. 2744.02(A)(1) is not absolute. "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R .C. 2744.02(B) apply to expose the political subdivision to liability." *Colbert* at ¶8. These exceptions apply only to allegations of

negligent acts or when civil liability is expressly imposed upon the political subdivision by statute.   R.C. 2744.02(B)(2).

{¶ 19} ICM alleges tortious interference with a contract, which is an intentional act, and therefore does not fall within any of the exceptions to immunity set forth in R.C. 2744.02(B).   Indeed, the Ohio Supreme has held that political subdivisions are generally immune from liability for intentional torts.   *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 639 N.E.2d 105.   Although R.C. 2744.09 excepts political subdivisions from immunity for certain kinds of civil actions, none of the exceptions are applicable here.   Thus, the Boards are immune from ICM's intentional interference with contract claims.

> For employees of political subdivisions, however, the analysis of immunity differs.  Instead of the three-tiered analysis described in *Colbert*, R.C. 2744.03(A)(6) provides that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Ohio Revised Code.   R.C. 2744.03(A)(6); *Wilson* at 452; *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 639 N.E.2d 31.

{¶ 20} ICM alleges that both Haynes and Stubbs were acting with malicious purpose and in bad faith when they terminated ICM's contracts.   As such, ICM argues that Haynes and Stubbs were acting outside the scope of their official responsibilities.

{¶ 21} R.C. Chapter 2744 does not define the type of employee acts that fall "manifestly outside the scope of employment or official responsibilities" under R.C. 2744.03(A)(6)(a). However, Ohio courts have generally drawn from agency-law

principles to hold that "conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." *Jackson v. McDonald* (2001), 144 Ohio App.3d 301, 307, 760 N.E.2d 24; *Chesher v. Neyer* (C.A.6, 2007), 477 F.3d 784, 797. "In the context of immunity, '[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment.'" *Jackson* at 307. "It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment." Id.

{¶ 22} Within the context of R.C. 2744.03(A)(6), "malice" refers to a willful and intentional design to do injury. *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 453, 602 N.E.2d 363. An employee acts in "bad faith" where there is a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive." Id. at 454, quoting *Slater v. Motorists Mutual Ins. Co.* (1962), 174 Ohio St. 148, 187 N.E.2d 45, paragraph two of the syllabus.

{¶ 23} There is evidence in the record tending to show that the Boards did not have a justifiable reason for terminating ICM's contracts. Although there is evidence that ICM may have assisted CEP with its billing and one other project in violation of paragraph 17 of the contracts, Robert Townsend ("Townsend"), then president of all 19 schools, testified that ICM performed in accordance with the contracts. He stated in an affidavit that: "[t]here simply was no basis to cancel the contracts." Even Haynes

admitted at his deposition that ICM never failed to perform any required services. However, Haynes also admitted that in hindsight, ICM's contract price of $1,500 per school, per month for services was too high and "not a good deal" for the Boards.

{¶ 24} Townsend also suggested that Haynes's actions were motivated by self-interest. In his affidavit, Townsend stated that in January 2007, Haynes indicated that he wanted to terminate the ICM contract so that he and other Board members could "take over the board management aspect of the contracts and be compensated to do so." To that end, Haynes introduced a resolution to the Boards to make Stubbs, Wilkens, Townsend, and Haynes consultants to the Board and receive compensation.

{¶ 25} Townsend further stated that he advised Haynes and the Boards' counsel that ICM had a three-year contract with a 30-day right to cure any problem before canceling the contract. When Townsend later discussed the ICM contract with Haynes, Haynes admitted that "he knew that not paying ICM, and canceling the contract was a violation of the contractual terms," but "he believed that ICM could not afford to fight the Schools for breach of contract and that it would be destroyed by any litigation." According to Townsend, Haynes admitted that "he intended to solicit the contracts for himself." Thus, there is evidence to support an allegation that Haynes wilfully terminated ICM's contract in bad faith and for his own personal benefit. Since there is evidence that Stubbs acquiesced in the plan to terminate ICM's contracts and assume the business for his personal gain, there is a question of fact as to whether Stubbs acted in bad

faith and outside the scope of his official capacity. Whether the employee acted with malicious purpose or in bad faith is generally a question of fact for the jury. *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, ¶14; *Fabrey* at 356. Therefore, the trial court properly denied the motion for partial summary judgment for Haynes and Stubbs.

{¶ 26} The first assignment of error is sustained as to the Boards I and overruled as to Haynes and Stubbs.

## Punitive Damages

{¶ 27} In the second assignment of error, the Boards, Stubbs and Haynes argue they are immune from punitive damages pursuant to R.C. 2744.05(A). R.C. 2744.05(A) provides:

> "Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function:

> "(A) Punitive or exemplary damages shall not be awarded."

{¶ 28} Thus, not only are the Boards immune from liability under R.C. 2744.02(A), but R.C. 2744.05(A) plainly prohibits awarding punitive damages in a tort action against a political subdivision. ICM's claim for punitive damages against Haynes and Stubbs, however, alleges that Haynes and Stubbs acted with malicious purpose and in bad faith when they intentionally interfered with its contracts with the Boards. As such, ICM alleges claims for punitive damages against Haynes and Stubbs in

their individual capacity rather than in their official capacity as Board members. See *Jackson* at 307. Immunity from punitive damages available to political subdivisions is not available to government employees sued in their individual capacity and outside the scope of their official capacity. R.C. 2744.03(A)(6).

{¶ 29} Therefore, the second assignment of error is sustained as to the Boards II and overruled as to Haynes and Stubbs.

{¶ 30} Judgment is affirmed in part and reversed in part. The denial of partial summary judgment on ICM's claims against the Boards is reversed, and the denial of partial summary judgment on ICM's claims against Haynes and Stubbs is affirmed.

It is ordered that appellants and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

MARY EILEEN KILBANE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR