OPINION
Plaintiff-appellant, Billie K. Horner, appeals from the judgment of the Franklin County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees, Jiffy Lube International, Inc., Jiffy Lube and Team Lubrication, Inc.
On November 6, 1999, appellant visited the Jiffy Lube store located at 1800 East Dublin-Granville Road in Columbus, Ohio, to have her vehicle's oil changed and tire pressure checked. After arriving at Jiffy Lube, appellant parked her vehicle outside the garage and went into the main office to inform the attendant of the services she wanted. Appellant then waited in the Jiffy Lube's lobby area for the services to be finished.
In the meantime, appellant's vehicle was driven by a Jiffy Lube employee into Bay Five of the six-bay garage. A Jiffy Lube technician, Patrick Dillon, performed the requested service upon appellant's vehicle, and then went to the lobby to fetch appellant so that she could view the condition of her vehicle. Appellant followed Mr. Dillon from the lobby to Bay Five. In the East Dublin-Grandview Road Jiffy Lube, the lobby is located on the east side of the building. Bay Five is in the southwest corner of the building. Thus, in order to get from the lobby to Bay Five, Mr. Dillon and appellant had to cross the length of the garage.
The garage consists of a large open space, with garage doors on the north and south sides of the building. Although three long, narrow pits transect the garage from north to south, there is a walkway space running parallel to the garage doors on both sides of the garage. Vehicles are driven into the garage and over the pits so that Jiffy Lube employees can perform work underneath the vehicles from the basement of the garage. Each pit is framed by a 3 1/2 inch high edge, which is yellow in color and is ringed with yellow and black safety striping on the outside of the edge. A black oil pan, approximately thirty inches by thirty-six inches, spans the width of each pit. The oil pan rests on steel wheels so that it can be rolled up and down the length of the pit.
Eight-feet mesh wire platforms laid over the mid-point of each pit divides each pit into two thirteen-feet long, three-feet wide bays. Each bay can accommodate one vehicle. When a vehicle is driven into a bay, the pit, which is then beneath the vehicle, cannot be easily seen.
At the time appellant was in the garage, five of the six bays were in use. The only bay not in use was Bay One, which is parallel to Bay Five, but separated from Bay Five by Bay Three. In order to reach Bay Five from the lobby, Mr. Dillon and appellant walked in a slight southwesterly diagonal from the door of the lobby to the south side of the building. Mr. Dillon and appellant then walked parallel to the south-side garage doors, passing Bay One and Bay Three before coming to Bay Five. This journey took approximately eight to ten seconds.
Upon reaching appellant's vehicle, Mr. Dillon showed appellant the work that had been performed, and the two discussed possible additional work to appellant's vehicle for approximately two minutes. Appellant then turned and walked back along the south side of the garage, heading to the lobby. After walking a few steps, appellant passed Bay Three, where a vehicle was being serviced by a Jiffy Lube technician. The vehicle's hood was propped up and the technician was leaning over the front of the vehicle. Approximately two seconds after clearing the front bumper of the vehicle in Bay Three, appellant tripped over the 3 1/2 inch ledge that framed the pit in Bay One and fell into the pit.
In attempting to return to the lobby, appellant had essentially retraced the same path she took to reach her vehicle. However, in order to take a more direct path to the lobby, appellant veered too much to the north (or her left), and rather than clearing the oil pit, appellant stumbled into the edge at the far end of the oil pit.
Appellant filed suit against appellees, alleging that appellees' negligence proximately caused the injuries she sustained in the fall. Appellees moved for summary judgment, arguing that the oil pits were an "open and obvious" danger. Agreeing with appellees, the trial court granted summary judgment. Appellant then filed this appeal.
Appellant assigns the following error:
 THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.
Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
To establish a cause of action for negligence, the plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately caused by the breach. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 680. The trial court concluded, and appellees now argue, that appellant failed to establish that a duty existed because the oil pit appellant fell into was "open and obvious."
A business owner owes a duty of ordinary and reasonable care for the safety of its customers and is required to keep the business premises in a reasonably safe condition. Perry v. Eastgreen Realty Co. (1978),53 Ohio St.2d 51, 53. This duty owed, however, does not make the business owner an insurer of the customer's safety. Id. at 52. Rather, the business owner's obligation is limited, and does not extend to the protection of customers against dangers which are known to them, or which are "open and obvious." Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 48. In applying the "open and obvious" doctrine, courts reason that, because of the open and obvious nature of the hazard, the business owner may reasonably expect its customers to discover these hazards and take appropriate measures to protect themselves. Simmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 644. See, also, Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 203-204 ("a shopkeeper is under no duty to protect business invitees from dangers `which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them'"), quoting Sidle, supra, at paragraph one of the syllabus.
This court has consistently held that "the open and obvious doctrine is determinative of the threshold issue, the landowner's duty." Anderson v. Ruoff (1995), 100 Ohio App.3d 601, 604. If the danger is determined to be open and obvious, the business owner owes no duty to the customer. Id.; Mustric v. Penn Traffic Corp. (2000), Franklin App. No. 00AP-277.
Despite this precedent, appellant argues that the decision of Texler, supra, altered the nature of the "open and obvious" doctrine. Appellant contends that, pursuant to Texler, whether a danger is open and obvious is now a factor to be considered in determining comparative negligence, not the existence of a duty. In Whitelaw v. The Fifty-Five Restaurant Group, Ltd. (2001), Franklin App. No. 00AP-668, we explicitly rejected this argument. As we stated in Whitelaw, the issue presented in Texler was whether the court of appeals should have entered judgment for defendant notwithstanding the verdict based upon its assessment that the plaintiff contributed over fifty percent of the negligence involved in her fall over a bucket of concrete used to prop open the defendant's door. The court held that there was enough evidence to support the jury's decision that the defendant was one hundred percent negligent in using a door stopper that partially obstructed the walkway. Therefore, the court reversed and remanded the case to the court of appeals for review of other issues previously considered moot. No where in the majority opinion did the court address the "open and obvious" doctrine. While we recognize that the court reached the question of comparative negligence in a case that arguably could have been resolved based upon the "open and obvious" doctrine, we decline to alter a long-established legal principle based upon precedent that does not address that principle. Therefore, Texler is inapplicable in determining whether one party's duty to another party is vitiated by the open and obvious nature of the danger.
Further, we reject appellant's reliance on Nienhaus v. The Kroger Co. (2001), Franklin App. No. 00AP-1083, to the extent that appellant suggests that this court held that the "open and obvious" doctrine was applicable to the determination of proximate cause and not to the existence of a duty. The plaintiff in Nienhaus slipped and fell on a puddle of water left by the crew mopping the defendant's floors. This court, in Nienhaus, concluded that, given the factual circumstances, the hazard was not open and obvious. Therefore, the defendant owed a duty to plaintiff. Because this court was satisfied that the defendant's duty was not negated by the "open and obvious" doctrine, we went on to address the issues of breach and proximate causation. Thus, as demonstrated in Nienhaus, the "open and obvious" doctrine relates solely to whether one party owes a duty to another party in the first place.
Appellant argues that summary judgment is inappropriate given the questions of material fact that exist regarding the breach of the duty owed to appellant. We decline to address the merits of appellant's argument because these alleged material facts are irrelevant to the operative issue in this case whether appellees' duty of ordinary and reasonable care was vitiated by the open and obvious nature of the oil pit that appellant fell into. As we stated above, the first element of proving negligence is the establishment of a duty. If the oil pit was open and obvious, whether appellant can prove the other elements of negligence is superfluous.
Although the determination of the existence and obviousness of a danger is a question of law, it requires the review of the facts of each particular case. Miller v. Beer Barrel Saloon (1991), Ottawa App. No. 90-OT-050. See, also, Allen v. Foxfire Golf Club, Inc. (2000), Pickaway App. No. 99CA18 ("[t]rip-and-fall cases are legion, each turning on very small differences in the factual situation"). Based upon a review of the facts of this case, we conclude that the oil pit was not open and obvious.
Appellees argue that the oil pit was open and obvious because it was approximately thirteen feet long and three feet wide, had a 3 1/2 inch high yellow edge with yellow and black striping, and appellant had previously walked past it without incident. Although these facts are undisputed, we believe other facts demonstrate that the risk of harm was not open and obvious to appellant.
First, appellant was not familiar with the garage and, thus, did not have any knowledge of the oil pits. Appellant's deposition testimony establishes that, although she had visited the Jiffy Lube in question a number of times, she had never been inside the garage area. See Hammoud v. My-Tee Muffler (1995), Wood App. No. WD-94-089 (considering the plaintiff's inexperience with garages as factor in concluding that a cross-bar on a vehicle lift was not necessarily open and obvious). Furthermore, the evidence demonstrates that the Jiffy Lube technician who led appellant to her vehicle did not pause to point out the oil pit or its dangers.
Second, appellant's view of the oil pit could have been obscured by the vehicle being serviced in Bay Three. When appellant walked past the vehicle being serviced in Bay Three, the vehicle's hood was raised and a Jiffy Lube technician was bent over the vehicle. Only two seconds after passing the front bumper of the vehicle, appellant fell into the oil pit. Given that appellant fell into the oil pit almost immediately after passing the vehicle and technician, it is possible that she did not have enough time to inspect the hazard. See Zimmerman v. The Kroger Co. (2000), Jackson App. No. 00CA002 (the defendant was not entitled to summary judgment based upon its claim that a floor mat was open and obvious when the mat may have been obscured); Schuley v. Consolidated Stores Corp. (2000), Mahoning App. No. 98 CA 138 (holding that reasonable minds could conclude that the plaintiff had no opportunity to inspect a rug when it was situated immediately on the other side of the door through which the plaintiff entered the defendant's store); Wehrle v. ABC Supply Co. (1999), Hamilton App. No. C-980476 (reversing summary judgment for defendant because reasonable minds could conclude that the drain may have been obscured by a truck); Hacker v. City of Cincinnati (1998),130 Ohio App.3d 764, 769 (hazard not open and obvious because crowds of people walking around the plaintiff might have obscured his view of the curb he tripped over).
Third, the placement and color of the oil pan within the oil pit may have made the pit difficult to see. The floor of the garage area was unpainted cement and, consequently, gray in color. The oil pan, which was black in color, may have been difficult to see given the similarity in color to the floor. Additionally, the oil pan itself, which stretched across the width of the oil pit, may have given the illusion that it was part of the solid floor. Due to the similarity of the color between the oil pan and the floor and the pan's placement in the pit, appellant's peripheral view of the area may have indicated to her that there was no break in the floor. See Thompson v. Do-An, Inc. (2000), Tenth App. No. 99AP-1423 (the similarity of color of the landing, hall and step may have contributed to making the step the plaintiff tripped on undetectable); Miller, supra (holding that reasonable minds could conclude that floor mats were not an obvious and apparent danger when the mats were the same approximate color of slate of the floor).
Finally, appellant may have been distracted by "attendant circumstances," including the noise and activity of a busy garage. Attendant circumstances are "`any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time.'" Walters v. City of Eaton (2002), Preble App. No. CA2001-06-012, quoting McGuire, supra, at 449 (approaching traffic was an attendant circumstance that enhanced the danger of a gap between the road and a manhole on which the plaintiff tripped). At the time appellant fell, the garage was operating at nearly full capacity, with five vehicles being simultaneously serviced by at least six Jiffy Lube employees. Appellant was invited into this unfamiliar environment full of distractions without any warnings as to particular dangers she should protect against. Construing these facts in the light most favorable to appellant, reasonable minds could conclude that attendant circumstances enhanced the danger to appellant.
Because we have concluded that the oil pit was not an open and obvious danger under the circumstances presented, appellant's assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
BOWMAN, J., concurs.
PETREE, J., dissents.