OPINION
{¶ 1} Defendant-Appellant, the Hancock County Commissioners, appeals the judgment of the Hancock County Court of Common Pleas denying their motion for summary judgment against Plaintiff-Appellees, Julie Rasmussen, individually and as parent and next friend of Angela Rasmussen and Crystal Rasmussen. On appeal, the Hancock County Commissioners contend that the trial court erred in denying their motion for summary judgment because there are no genuine issues of material fact as to whether they negligently maintained a bridge and as to whether they are immune from civil liability. Finding that there are genuine issues of material fact, we affirm the judgment of the trial court.
 {¶ 2} The following facts are undisputed. In June 2003, Gudmund Rasmussen was driving his truck on County Road Thirty-Seven in Hancock County with his minor daughters, Angela and Crystal, when he struck a guardrail on the County Road 37-6.36 bridge (hereinafter referred to as the "Hardy Creek Bridge"). Part of the guardrail dislodged from the bridge and impaled the vehicle, injuring Angela and Crystal. *Page 4 
 {¶ 3} In June 2005, Julie filed a complaint, individually and as next friend of Angela and Crystal (hereinafter collectively referred to as "Appellees"), against the Hancock County Commissioners (hereinafter referred to as the "Commissioners"), Gudmund, Anthem Blue Cross and Blue Shield, Wausau Benefits, Inc., and John Doe. Appellees' complaint alleged, in part, negligence, stating that the Commissioners were responsible for the repair and maintenance of bridges and guardrails in Hancock County; that Gudmund negligently operated the vehicle into a bridge with guardrails in Hancock County; that the bridge and guardrails were in defective condition and were negligently maintained by the Commissioners; that, as a result of Gudmund's and the Commissioners' negligence, Angela and Crystal suffered injuries; and, that Julie suffered loss of consortium attributed to Angela's and Crystal's injuries. Appellees' complaint further alleged negligence per se, stating that the Commissioners had a duty to maintain and repair the bridge and guardrails; that the bridge and guardrails were inadequate and negligently maintained in violation of R.C. 5591.22, et seq. and5591.36, et seq.; that the Commissioners were on notice of the defective bridge and guardrails; that the bridge guardrail dislodged as a result of the accident and impaled Angela's leg, requiring amputation; and, that Angela and Crystal were injured as a result and Julie suffered loss of consortium. *Page 5 
 {¶ 4} In July 2005, the Commissioners responded to Appellees' complaint, denying the allegations in the complaint and setting forth the affirmative defenses that Appellees failed to state a claim upon which relief may be granted; that the Commissioners are immune from liability by virtue of statutory immunity pursuant to R.C. 2744; that the Commissioners fully complied with any statutory duty imposed upon them; that Appellees failed to join all necessary and indispensible parties; that any injuries suffered by Appellees were solely caused by Gudmund's negligence; and, that any negligence on the Commissioners' part was exceeded by Gudmund's negligence.
 {¶ 5} In March 2006, the Commissioners filed a motion for summary judgment stating that there were no genuine issues of material fact and they were entitled to judgment as a matter of law. They contended that the depositions and affidavits attached established that ordinary traffic on the regularly traveled portion of the road was able to safely traverse the bridge, making R.C. 2744.02(B)(3) inapplicable; that the guardrail prevented the vehicle from going into the culvert, preventing liability pursuant to R.C. 2744.02(B)(5), 5591.36, or 5591.37; and, that, because these code sections were inapplicable, they were entitled to immunity under R.C. 2744.02(A)(1) and entitled to judgment as a matter of law. Alternately, the Commissioners contended that, even if there *Page 6 
existed a genuine issue of material fact as to whether the code sections were applicable, immunity should be reinstated pursuant to R.C. 2744.03(A)(3).
 {¶ 6} In support of their motion, the Commissioners attached an affidavit of Steven Wilson, the elected Hancock County Engineer, stating that, before the accident, the Hancock County Engineer's Office was not aware of a dangerous condition existing in conjunction with the Hardy Creek Bridge or its guardrails; that the bridge structure and guardrails never obstructed or interfered with the paved portion of County Road Thirty-Seven; and, that the guardrails fulfilled their purpose in preventing Gudmund's vehicle from leaving the roadway and going into Hardy Creek. Additionally, Wilson was deposed and stated that the width between the two guardrails of the bridge is 18.7 feet; that a "channel rail cap" is a steel angle iron rail on a guardrail; that the channel rail cap that came dislodged from the Hardy Creek bridge was approximately twenty-feet long and four inches wide; that, regardless of the reason, the channel rail cap became dislodged and protruded into the roadway at the time it penetrated the truck; and, that the bridge was on the 2003 budget to be replaced and was replaced after the accident.
 {¶ 7} Further, the Commissioners attached the deposition of Edwin Huston, an engineering aide for the county engineer, who stated that a channel rail cap dislodged from the bridge at some point; that bridges are rated according to condition; that, in 2002, the Hardy Creek Bridge was rated a four, meaning it was *Page 7 
in poor condition overall; that the guardrail was rated a one, which means it was in good condition; that the channel rail cap had surface rust, which can weaken the structure to which a weld is attached; that, in light of the accident, the channel rail cap and guardrail system failed; that, when the channel rail cap became dislodged and impaled the vehicle, the vehicle must have been within the roadway of the bridge; and, that the bridge was not a major concern to him "because structurally traffic was still getting across it all right." (Huston Dep., p. 52).
 {¶ 8} In April 2006, Appellees filed a response to the Commissioners' motion for summary judgment. In support, Appellees attached numerous exhibits and affidavits. Gudmund's affidavit stated that, in June 2003, he was driving eastbound on County Road Thirty-Seven approaching the Hardy Creek Bridge; that there had been a steady rain that had just abated; that he approached the bridge travelling approximately forty to forty-five m.p.h.; that he encountered standing water in the westbound lane of the bridge approach; that, as his truck contacted the standing water, it was pulled to the right and went off the right shoulder by a tire width; that he swerved back to the left and the front right corner of the truck struck the guardrail approach of the bridge; that the right front tire and wheel assembly broke; that he attempted to regain control of the truck, but was redirected to the north and a twenty foot long channel rail cap that topped the guardrail on the right side of the bridge, which encroached into the westbound lane *Page 8 
of the roadway, impaled the truck; and, that he was on the westbound portion of the paved roadway when the channel rail cap impaled the truck.
 {¶ 9} Additionally, Appellees attached the affidavit of Corey Miracle, Mayor of Rawson in Hancock County, who stated that he is very familiar with the Hardy Creek Bridge because he regularly traverses it to work; that, prior to the accident, a significant dip in the roadway existed in the westbound lane; that, if wet road conditions were present, standing water would accumulate in the dip; that cold patch was used many times to prevent standing water from accumulating in the dip; that the bridge was so narrow that only one car could safely traverse at a time; that the channel rail cap on the south side of the bridge was comprised of one piece and the channel rail cap on the north side of the bridge was comprised of two pieces; that the two channel rail caps on the north side were only spot-welded or attached to the posts; that the joint where the two channel rail caps abutted did not have a weld or cap or overlay connecting the two pieces; that he is also a member of the Rawson Volunteer Fire Department and requested Life Flight when responding to the accident, but was denied his request due to thunderstorms in the area.
 {¶ 10} Finally, Appellees attached the affidavit of Ervin Raber who stated that he is familiar with the Hardy Creek Bridge because he lives in the area and mows the area surrounding the Hardy Creek; that a weld did not exist at the area *Page 9 
where the northwestern half of the channel rail cap met the center posts of the bridge; that, approximately one month before the accident, he observed that the western half of the channel rail cap at the midpoint where it abutted the eastern half of the channel rail cap was loose and protruding approximately four to six inches into the roadway.
 {¶ 11} In September 2006, the trial court overruled the Commissioners' motion for summary judgment stating, in pertinent part, that:
 * * * The County attempts to cast the claim of liability upon the failure of the County to replace the bridge prior to the collision, which would clearly be either a discretionary policy making or planning function of the County Engineer, or a discretionary usage of equipment, supplies, personnel or money.
 The Third District Court of Appeals correctly observed in Flach v. Marion Co. Bd. of Commr's (Nov. 28, 1998), Marion App. No. 9-95-28, unreported, that nuisance, as found in R.C. 2744.02(B)(3), includes no "design and construction defects or the failure to erect * * * guardrails," citing Franks v. Lopez, 69 Ohio St.3d at 346. They went on, however, to point out that "[i]t does, however, impose a duty on political subdivisions "to keep highways open and safe for public travel," citing Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm. (1992), 63 Ohio St.3d 318, 321. Therefore, the issue for this court is "whether a condition exists * * * that creates a danger for ordinary traffic on the regularly traveled portion of the road." Id. at 322.
 * * *
 The court finds from the evidence before it, which it must construe most strongly in favor of [Appellees], that there are sufficient facts alleged that, if believed by the jury, could result in a finding that the County negligently maintained the roadway where the collision occurred, and that this *Page 10 negligence was not the result of discretionary or policy-making decisions.
(Sept. 2006 Judgment Entry, pp. 5-6).
 {¶ 12} In October 2006, the Commissioners appealed this judgment to this Court.
 {¶ 13} In December 2006, this Court dismissed the appeal, finding that it was not a final appealable order.
 {¶ 14} In October 2007, the Supreme Court of Ohio reversed this Court's dismissal of the appeal and remanded it pursuant to Hubbell v.Xenia, 115 Ohio St.3d 77, 2007-Ohio-4839.
 {¶ 15} In November 2007, this Court reinstated the Commissioners' appeal.
 {¶ 16} It is from the September 2006 denial of their motion for summary judgment that the Commissioners appeal, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT, HANCOCK COUNTY COMMISSIONERS, WHEN IT DENIED THE MOTION FOR SUMMARY JUDGMENT FILED BY THE HANCOCK COUNTY COMMISSIONERS.
 {¶ 17} In their sole assignment of error, the Commissioners contend that the trial court erred to their prejudice in denying their motion for summary judgment. Specifically, the Commissioners allege that there were no genuine issues of material fact as to whether they negligently maintained the bridge approach *Page 11 
because no reasonable jury could believe that the roadway approaching the bridge was wet or that a pool of water was present. Additionally, the Commissioners argue that the Political Subdivision Tort Liability Act provides that they are immune under the circumstances. Finding that there are genuine issues of material fact as to whether the Commissioners negligently maintained the bridge and whether immunity is applicable, we affirm the judgment of the trial court.
 Standard of Review {¶ 18} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex. Rel. Cassels v. Dayton CitySchool Dist. Bd. of Ed, 69 Ohio St.3d 217, 222, 1994-Ohio-94. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issues of material fact remain to be litigated; (2) reasonable minds can come to only one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C); Horton v. Harwick Chemical Corp., 73 Ohio St.3d 679,686-687, 1995-Ohio-286. Summary *Page 12 
judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360.
 {¶ 19} The party moving for summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. Athens Cty.Clerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials in his pleadings. Id.
 Political Subdivision Liability {¶ 20} R.C. 2744 governs political subdivision immunity from civil liability. In determining whether a political subdivision is immune under R.C. 2744, a reviewing court must engage in a three-tiered analysis. Adams v. Gables at Green Pastures Nursing Home, 3d Dist. No. 14-06-33, 2006-Ohio-6856, at ¶ 15, citing Hubbard v. Canton City SchoolBd. of Edn., 97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 10, citingCater v. Cleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421. First, the court must determine whether the entity claiming immunity qualifies as a political subdivision and whether the harm occurred in connection with a *Page 13 
governmental or proprietary function. Id., citing R.C. 2744.02(A)(1). If the first tier is satisfied, the court must then move to the second tier of the analysis.
 {¶ 21} The second tier of the analysis determines whether any exceptions to immunity apply. The general rule is that political subdivisions are not liable in damages, Id., citing Hubbard, 2002-Ohio-6718, at ¶ 12; however, exceptions to immunity are enumerated in R.C. 2744.02(B), providing, in pertinent part:
 (3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.] * * *
 * * *
 (5) * * * [A] political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivisions by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. * * *
 {¶ 22} Additionally, the term "public roads" used in R.C. 2744.02(B)(3) includes bridges. R.C. 2744.01(H). Further, R.C. 5591.36
governs guardrails for bridges and provides:
 The board of county commissioners shall erect and maintain on county roads, where not already done, one or more guardrails on each end of a county bridge, viaduct, or culvert more than five feet high. The board also shall protect, by guardrails, all embankments with a rise of more than eight feet in height and with a downward slope of greater than seventy degrees, where the embankments have an immediate connection with a county road. *Page 14 
 {¶ 23} In addition, R.C. 5591.21 governs bridges in municipal corporations and provides that:
 Except as provided in section 5501.49 of the Revised Code, the board of county commissioners shall construct and keep in repair necessary bridges over streams and public canals or on connecting state, county, and improved roads.
 {¶ 24} In analyzing the R.C. 2744.02(B) exceptions to immunity, this Court has determined that liability under R.C. 2744.02(B)(3)[1] does not include "design and construction defects or the failure to erect * * * guardrails." Flach v. Marion Cty. Bd. of Commrs., 3d Dist. No. 9-95-28, 1995 WL 723161, citing Franks v. Lopez (1994),69 Ohio St.3d 345, 346. However, we found that the statute "impose[s] a duty on political subdivisions `to keep highways open and safe for public travel.'" Id., quoting Manufacturer's Natl. Bank of Detroit v. Erie Cty.Road Comm. (1992), 63 Ohio St.3d 318, 321. Accordingly, we determined that the issue is "`whether a condition exists * * * that creates a danger for ordinary traffic on the regularly travelled portion of the road.'" Id., quoting Manufacturer's Natl. Bank of Detroit,63 Ohio St.3d at 322.
 {¶ 25} The third tier of the analysis determines whether the political subdivision can reinstate immunity by proving that a defense to liability listed in *Page 15 
R.C. 2744.03 applies. Id., citing Cater, 83 Ohio St.3d at 28. R.C. 2744.03(A) provides, in pertinent part:
 In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 26} In interpreting R.C. 2744.03, this Court has stated that "[t]he defenses to liability in R.C. 2744.03 must be read narrowly."Willis, 158 Ohio App.3d at 451, citing Howell v. Union Twp.Trustees (1997), 4th Dist. No. 96CA2430, 1997 WL 142388. As the Fourth Appellate District has stated, "the defenses and immunities of R.C. 2744.03 cannot be read to swallow up the liability provisions of R.C. 2744.02(B) so as to render them nugatory." Howell, supra. *Page 16 
 {¶ 27} Discretion, pursuant to R.C. 2744.03(A)(3) and (5), involves policy-making and the exercise of independent judgment. Willis,158 Ohio App.3d at 451, citing Hacker v. Cincinnati (1998), 130 Ohio App.3d 764,770. Specifically, the Supreme Court of Ohio has held that "* * * physical impediments such as potholes are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so." Franks, 69 Ohio St.3d at 349. Additionally, the First Appellate District has found that "[a] political subdivision can not [sic] simply assert that all of its decisions are discretionary in order to obtain protection under R.C. 2744.03(A)(3) and (A)(5). If a plaintiffs injuries stem from a political subdivision's negligent maintenance or operation of a structure under its control, then the political subdivision will not be immune from liability[.]"Hacker, 130 Ohio App.3d at 770. See, also, Hall v. Fort Frye LocalSchool Dist. Bd. of Edn. (1996), 111 Ohio App.3d 690; Malone v.Chillicothe, 4th Dist. No. 05CA2869, 2006-Ohio-3268.
 Assignment of Error {¶ 28} Here, the Commissioners claim immunity under the general rule in R.C. 2744; however, Appellees claim that several exceptions to immunity enumerated in R.C. 2744.02(B) are applicable. Alternately, the Commissioners *Page 17 
argue that, even assuming that an exception to immunity applies, they may assert as defenses R.C. 2744.03(A)(3) and 2744.03(A)(5) to reinstate immunity.
 {¶ 29} Initially, we note that neither party disputes that the Commissioners qualify as a political subdivision or that the harm occurred in connection with a governmental or proprietary function. Thus, the first tier has been satisfied and our analysis will concentrate on the second and third tiers of the political subdivision immunity analysis.
 {¶ 30} The second tier determines whether any R.C. 2744.02(B) exceptions to immunity apply. Here, both parties concede that R.C. 2744.02(B)(3) and 2744.02(B)(5) are the sections applicable, if any; however, the Commissioners contend that there is no genuine issue of material fact as to whether they negligently maintained the bridge approach because no reasonable jury could believe that the roadway approaching the bridge was wet or that a pool of water was present. Specifically, the Commissioners state that, pursuant to Scott v.Harris (2007), 550 U.S. ___, when a story told by one of the parties is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that party's version of the facts for purposes of ruling on a motion for summary judgment. The Commissioners contend that, applying that rule of law to this case, the court may not adopt Gudmund's assertion that it had been raining before the accident and that there was a pool of water at the bridge *Page 18 
approach. According to the Commissioners, Gudmund's statement is blatantly contradicted by evidence in the record that the pavement was dry, specifically the Ohio State Highway Patrol Accident Report and the photographs taken by the Ohio State Highway Patrol immediately after the accident marked Plaintiffs' exhibits 1-A through 1-E, and contained in Appellees' response to the Commissioners' motion for summary judgment.
 {¶ 31} The Ohio State Highway Patrol Accident report states that the road conditions were dry at the time the Trooper completed the report. Plaintiffs' exhibit 1-A does not show the road, exhibits 1-B and 1-D do not show the portion of the road in question, and exhibits 1-C and 1-E appear to show some wet areas on the road, although other portions appear dry. Additionally, we note that Miracle's affidavit provides that he was refused his request for Life Flight after the accident due to thunderstorms in the area. Considering all of the evidence, we cannot find that Gudmund's statement was so blatantly contradicted that we should not adopt his version of the facts for purposes of ruling on summary judgment. Consequently, construing the facts in a light most favorable to Appellees, we must assume for summary judgment purposes that there was a pool of water at the approach to the Hardy Creek Bridge at the time of the accident.
 {¶ 32} Further, even if we had concluded that Gudmund's statement was so blatantly contradicted that we should not adopt his version of the facts as to the *Page 19 
pooled water, issues remain as to the Commissioners' alleged negligent maintenance of the bridge guardrail.
 {¶ 33} Further, the Commissioners contend that neither R.C. 5591.36
nor 5591.37 are applicable to this case because R.C. 5591.36 was enacted after the bridge in question was built, although prior to the accident. The Commissioners contend that the wording of R.C. 5591.36, "[t]he board of county commissioners shall erect and maintain on county roads,where not already done, one or more guardrails on each end of a county bridge" (emphasis added), reflects that the statute does not apply to bridges built before its enactment, and that, consequently, R.C. 5591.37
is inapplicable. We cannot see how this phrase indicates that the General Assembly intended to absolve political subdivisions from maintaining guardrails on bridges built prior to the statute's enactment, and note that no case law supports this conclusion. We hold that the phrase "where not already done" refers to the erecting of guardrails only, and that maintenance is a continuing duty.
 {¶ 34} Accordingly, we must consider the evidence to determine if R.C. 2744.02(B)(3) and/or 2744.02(B)(5) are applicable. The record reflects that evidence exists that the guardrail system and channel rail cap failed; that, when the channel rail cap dislodged and impaled the vehicle, the vehicle was on the paved roadway; that the channel rail cap must have been protruding into the roadway at the time it impaled the vehicle; that the channel rail cap was loose and sticking out *Page 20 
approximately four to six inches into the roadway approximately one month before the accident; that the joint where the two channel rail caps abutted was not welded or connected in any way; that there was a significant dip in the roadway of the bridge approach where standing water accumulated; that the dip had previously been cold-patched to prevent it from collecting water; and, that there was pooled water in the dip immediately prior to the accident.
 {¶ 35} Based on the foregoing, because R.C. 2744.02(B)(3) imposes liability where injury is caused by a political subdivision's negligent failure to keep public roads in repair and the term "public roads" includes bridges, we find that a genuine issue of fact exists as to whether this exception to immunity is applicable in this case. Similarly, because R.C. 2744.02(B)(5) imposes liability for injury where liability is expressly imposed by the Revised Code, because R.C. 5591.36
requires county commissioners to erect and maintain guardrails on county bridges, and because R.C. 5591.21 requires county commissioners to keep bridges in repair, we find that a genuine issue of fact exists as to whether this exception to immunity is applicable here. Consequently, we must continue to the third tier of our analysis.
 {¶ 36} The third tier determines whether the political subdivision may exert any defenses under R.C. 2744.03(A) in order to reinstate liability. Here, the Commissioners contend that, under R.C. 2744.03(A)(3), they are immune from *Page 21 
liability because the failure to repair the bridge guardrail which resulted in Appellees' injuries was discretionary policy-making or a planning function of the county. Further, the Commissioners contend that, under R.C. 2744.03(A)(5), they are immune from liability because the failure to repair the bridge guardrail which resulted in Appellees' injuries was a discretionary usage of equipment, supplies, materials, personnel, and fiscal resources.
 {¶ 37} The interpretation of R.C. 2744.03(A)(3) and (5) found inFranks, Howell, and Hacker, indicate that failure to repair physical impediments such as potholes is not discretionary policy-making and that immunity does not apply where injuries stem from negligent maintenance of a structure under the political subdivision's control. Therefore, we find that decisions regarding the maintenance of the guardrail or bridge approach repair are not discretionary policy-making or a discretionary use of resources entitled to reinstated immunity.
 {¶ 38} Therefore, we affirm the trial court's denial of summary judgment, finding that there are genuine issues of material fact as to whether the Commissioners were negligent and whether they are immune from civil liability.
 {¶ 39} Accordingly, we overrule the Commissioners' assignment of error. *Page 22 
 {¶ 40} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and PRESTON, J., concur.
[1] We note that these cases interpreted the former R.C. 2744.02(B)(3), effective before April 9, 2003, which held political subdivisions liable for injuries resulting from failure to keep public roads "in repair and free from nuisance," see Willis v. CommoditySpecialists, 158 Ohio App.3d 444, 2004-Ohio-4807; however, both versions are substantively similar. *Page 1